**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-cv-00813-BJB-CHL**

**PAULA ROBERSON,**                                                                    **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                         **Defendant.**

**REPORT AND RECOMMENDATION**

Before the Court is the Complaint filed by Plaintiff, Paula Roberson ("Roberson"). In her Complaint, Roberson seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 21.) Both Roberson and the Commissioner filed a Fact and Law Summary. (DNs 17, 18.) Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

**I.     FINDINGS OF FACT**

On October 12, 2016, Roberson protectively filed an application for disability insurance benefits ("DIB") alleging disability beginning on August 1, 2015. (R. at 152-55.) On September 6, 2018, Administrative Law Judge John R. Price (the "ALJ") conducted a hearing on Roberson's application. (*Id.* at 23-47.) In a decision dated November 29, 2018, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner. (*Id.* at 9-18.) In completing this evaluation, the ALJ made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2019. (*Id.* at 14.)

2. The claimant has not engaged in substantial gainful activity since August 1, 2015, the alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: degenerative disc disease (DDD) and osteoarthritis of the knees. (*Id.*)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 15.)

5. [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift/carry up to 10 pounds. The claimant can stand/walk for two hours in an eight-hour day and sit for six hours in an eight-hour day. The claimant cannot climb ladders, ropes or scaffolds but can occasionally bend, stoop, kneel and crouch. Additionally, the claimant can occasionally climb ramps and stairs. The claimant cannot crawl. The claimant cannot use foot controls and must avoid cold temperature extremes, concentrated wetness and concentrated vibrations. (*Id.*)

6. The claimant is capable of performing past relevant work as a data entry clerk, receptionist and administrative assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (*Id.* at 17.)

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2015, through the date of this decision. (*Id.* at 18.)

Roberson subsequently requested an appeal to the Appeals Council, which denied her request for review on October 18, 2019. (*Id.* at 1-6, 148-51.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R.§ 422.210(a) (2020); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Roberson is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Roberson timely filed this action on November 8, 2019. (DN 1.).

## II. CONCLUSIONS OF LAW

The Social Security Act authorizes payments of DIB to persons with disabilities. *See* 42 U.S.C. §§ 401-434. An individual shall be considered "disabled" if he or she is unable "to engage

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2020).

### A.     Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.     Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. § 404.1520 (2020). In summary, the evaluation process proceeds as follows:

> (1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
>
> (2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.
>
> (3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.
>
> (4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.
>
> (5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.   Roberson's Contentions

Roberson argued that the ALJ failed to properly follow the treating physician rule in determining her RFC. (DN 17-1, at PageID # 437-39.) Roberson also argued that the ALJ

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. § 404.1509 (2020).

4

misstated certain evidence in the record. (*Id.* at 440.) The undersigned will consider each of Roberson's contentions below.[2]

### 1.  Treating Physician Rule

Roberson contended that the ALJ failed to properly apply the treating physician rule. (DN 17-1, at PageID # 437-39.) Specifically, Roberson argued that the ALJ did not determine whether to give controlling weight to the opinion of her treating physician Dr. Robert Johnson, D.O., ("Dr. Johnson") and to account for the functional limitations included within Dr. Johnson's opinion. (*Id.* at 438-39.)

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do in a work setting despite his or her physical and mental limitations and is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record. 20 C.F.R. § 404.1545(a) (2020). Thus, in making an RFC finding, the ALJ must (1) assign weight to the medical source statements in the record; and also (2) consider the descriptions and observations of the claimant's limitations as a result of the impairments from the claimant and the claimant's family and friends. 20 C.F.R. § 404.1545(a)(3). The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Generally, an ALJ must give greater weight to the medical opinions of treating sources than to non-treating sources. 20

---

[2] Roberson also included a heading in her Fact and Law Summary titled "Listing Not Met" under which she summarized that the ALJ had found that she failed to meet the requirements of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (DN 17-1, at PageID # 436-37.) However, Roberson failed to make any specific argument about how the ALJ erred in his Listing analysis in either that section or elsewhere in her brief. On her Fact and Law Summary Form, she even listed the ALJ's Listing Finding as one of the ones she intended to challenge but then included the word "conceded" on the line below that before moving on to her next argument. (DN 17, at PageID # 430.) The confusing notation on her Fact and Law Summary Form notwithstanding, because Roberson failed to develop a specific argument on this point, the undersigned deems any argument with respect to the ALJ's Listing analysis waived. *See United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997)); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006).

C.F.R. § 404.1527(c)(2) (2020). Treating physician's opinions carry more weight because the opinions likely provide "a detailed, longitudinal picture" of the claimant's medical impairments that cannot be obtained solely from objective medical findings or from reports of consultants' examinations. *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004). An ALJ must give a treating source opinion concerning the nature and severity of the claimant's impairment controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2).

If the treating source is not given controlling weight, then the "opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Whatever weight the ALJ accords a treating source's opinion, he or she must set forth "good reasons" for doing so. *Wilson*, 378 F.3d at 544 ("The regulation requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." (citing 20 C.F.R. § 404.1527(d)(2)). Specifically, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 61 Fed. Reg. 34,490, 34,492 (July 2, 1996) (rescinded for all claims filed on or after March 27, 2017 by Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (March 27, 2017)).[3]

---

[3] Because Roberson's claim was filed before March 27, 2017, SSR 96-2p still applies to her claim.

Here, the ALJ afforded "little weight" to the opinion of Roberson's treating physician, Dr. Johnson. (R. at 17.) Dr. Johnson submitted a medical source statement indicating that Roberson could stand and walk zero to two hours and sit four hours in an eight hour workday with normal breaks. (*Id.* at 311.) He opined that Roberson would need a job permitting her to shift positions at will from sitting, standing, or walking; could occasionally lift less than ten pounds, rarely lift ten to twenty pounds, and never lift fifty pounds; and could never crouch/squat, rarely twist and stoop/bend, and occasionally climb ladders and stairs. (*Id.*) He also opined that Roberson had anxiety that would frequently interfere with the attention and concentration needed to perform simple work tasks and that she was incapable of even "low stress" jobs. (*Id.* at 312.) He further opined that Roberson would likely be absent from work more than four days per month as a result of her impairments. (*Id.*) The ALJ discounted Dr. Johnson's opinion regarding Roberson's anxiety because she had never been diagnosed with anxiety; he noted elsewhere in his opinion that Roberson had never sought treatment for anxiety. (*Id.* at 14, 17.) He also discounted Dr. Johnson's opinion regarding her absences because "there [wa]s no evidence in the record [that] support[ed] a finding that the claimant would likely be absent from work more than four days per month." (*Id.* at 17.)

Roberson does not challenge the ALJ's analysis regarding her anxiety and instead argues that it was error for the ALJ to fail to "address the other limitations Dr. Jo[h]nson gave [her]," citing Dr. Johnson's description of her ability to stand/walk, sit, change positions at will, and lift. (DN 17-1, at PageID # 438-39.) However, the ALJ did summarize that Dr. Johnson's opinion included the limitations Roberson highlights before stating that little weight was attributed to the opinion. (R. at 17.) Accordingly, to the extent that the ALJ's ultimate RFC finding differed from

7

the limitations espoused by Dr. Johnson, his opinion evidences that he considered and rejected the greater limitations.

The ALJ cited in his analysis to Roberson's diagnosis of osteoarthritis of her knees and degenerative disc disease in her spine. (*Id.* at 16.) He summarized that MRI results showed marrow edema in the right posterior elements L3 and L4 levels of Roberson's lumbar spine as well as associated facet degenerative changes. (*Id.*) He summarized that mild scoliosis and other degenerative changes resulting in canal and foraminal compromise was observed. (*Id.*) He noted that pain medication prescribed moderate relief. (*Id.*) He observed that while some records indicated Roberson demonstrated an antalgic gait and frequently adjusted positions, her musculoskeletal and neurological examinations were otherwise normal. (*Id.*) He also cited the findings of consultative examiner Dr. Barefoot, who noted that Roberson had full range of motion in her cervical spine, shoulders, elbows, wrists, hips, and ankles and a restricted range of motion in her lumbar spine. (*Id.*) He cited Dr. Barefoot's observations that Roberson's gait was normal, Roberson did not demonstrate "gross instability or significant loss of mobility in either knee," and Roberson "demonstrated no evidence of radiculopathy affecting her lower extremities." (*Id.* at 16-17.) He assigned great weight to Dr. Barefoot's opinion given that it "[wa]s consistent with the record." (*Id.*) The ALJ then found Roberson to be capable of a slightly broader range of activities than Dr. Johnson. (*Compare id.* at 15, *with id.* at 311.) He determined she could sit for six hours instead of the four stated in Dr. Johnson's opinion, lift ten pounds without restriction instead of lift less than ten pounds frequently and ten pounds only occasionally as stated by Dr. Johnson, and that Roberson could occasionally bend and crouch in lieu of rarely bending and never crouching as opined by Dr. Johnson. He did not include a limitation regarding Roberson's need to shift positions at will as stated in Dr. Johnson's opinion. He also did not reject all of Dr. Johnson's

8

limitations. The ALJ and Dr. Johnson both found that Roberson could only stand and walk two hours out of an eight-hour workday and that she could never climb ladders. [4] To the extent the ALJ's opinion differed from that of Dr. Johnson, the undersigned finds that the ALJ supported his RFC determination and his assessment of Dr. Johnson's opinion with substantial evidence. Though Roberson criticizes the ALJ for not assessing whether Dr. Johnson's opinion was entitled to controlling weight, the undersigned finds that the ALJ's determination to afford little weight to the opinion encapsulates a determination not to afford it controlling weight. The undersigned also finds that the ALJ provided good reasons for doing so as required.

Roberson also argued that it was error for the ALJ to attribute more weight to the opinion of consultative examiner Dr Barefoot, a mere examining source, than that of Dr. Johnson. (DN 17-1, at PageID # 440.) However, she provided no citation to any authority sufficient to support that the same constitutes an automatic error; she merely invoked the general regulations requiring an ALJ to give controlling weight to the opinion of a treating physician where certain conditions are met. Because the undersigned has found the ALJ's determination of the weight to be afford to Dr. Johnson's opinion supported by substantial evidence and that the ALJ provided good reasons for the weight ascribed, the undersigned finds this argument to be without merit.

2. **Misstatement of Evidence**

Roberson argued that it was error for the ALJ to state in his opinion that "no treating or examining medical source has offered an opinion that the claimant is unable to work or an

---

[4] In the ALJ's description of Dr. Johnson's opinion, he stated that Dr. Johnson found Roberson could "stand/walk up to two hours." (*Id.* at 17.) Roberson argued that "up to two hours" is inconsistent with Dr. Johnson's actual opinion, which stated that Roberson could stand/walk for "0-2 hours." (DN 17-1, at PageID # 440.) Roberson argued that because there "[wa]s no lesser amount of time on the form," when Dr. Johnson "marked the form at zero to two hours in an eight-hour workday, he did not state she could stand/walk two hours in an eight-hour workday, but somewhere between zero to two hours in an eight hour workday." (*Id.*) The undersigned finds Roberson's argument to be and illogical interpretation of the record and ultimately without merit as two is within the range "0-2" marked by Dr. Johnson.

9

assessment of what activities the claimant can still perform supporting such a conclusion" given the medical sources statement submitted by Dr. Johnson. (DN 17-1, at PageID # 440.) However, the ALJ's opinion evidences that he considered Dr. Johnson's opinion and rejected certain limitations therein as discussed above. The statement pointed to by Roberson does not change the fact that the ALJ analyzed Dr. Johnson's opinion as required. To the extent that that ALJ included a boilerplate statement in his opinion that would otherwise suggest he was unaware of Dr. Johnson's opinion, the ALJ's explicit analysis of Dr. Johnson's opinion disproves the same as does the fact that the ALJ even referred to Dr. Johnson as "[t]he claimant's treating physician" in his opinion. (R. at 14.) Accordingly, the undersigned finds Roberson's contention that the ALJ "misstated the evidence" to be without merit and that any error was harmless given that the ALJ did consider Dr. Johnson's opinions according to the appropriate standards. *See Reeder v. Apfel,* 214 F.3d 984, 988 (8th Cir.2000) ("[A] deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency ha[d] no practical effect on the outcome of the case.").

### III. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the final decision of the Commissioner of Social Security be **AFFIRMED**.

February 19, 2021

Colin H Lindsay, Magistrate Judge
United States District Court

cc:     Counsel of Record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically

transmitted or mailed to all parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).